Vaidik, Chief Judge, dissenting.
[19] I respectfully dissent. First, I believe that Bobadilla has demonstrated deficient performance, in other words, that his trial counsel's performance fell below an objective standard of reasonableness. The State apparently believes so, too. See Appellee's Br. pp. 11, 13-14. That is, trial counsel wrote "N/A"-not applicable-next to the advisement "If you are not a U.S. citizen, a criminal conviction may have immigration consequences, including deportation," Appellant's App. Vol. II p. 26, without first asking Bobadilla whether this advisement applied to him. See Padilla v. Kentucky , 559 U.S. 356, 367, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) ("The weight of prevailing professional norms supports the view that counsel must advise her *789 client regarding the risk of deportation."). As a result of trial counsel marking "N/A," Bobadilla did not read the advisement before pleading guilty.[6]
[20] Second, I am fully convinced that Bobadilla has demonstrated a reasonable probability that he would have rejected the plea had he known that he would be deported. See Lee v. United States , --- U.S. ----, 137 S.Ct. 1958, 1967, 198 L.Ed.2d 476 (2017). Eighteen-year-old Bobadilla faced four misdemeanor charges: Class A misdemeanor theft, Class A misdemeanor possession of a controlled substance, Class B misdemeanor possession of marijuana, and Class C misdemeanor possession of paraphernalia. Two of these offenses were not deportable under the Immigration and Nationality Act-possession of marijuana and possession of paraphernalia. See 8 U.S.C. § 1227(a)(2). Bobadilla pled guilty to theft, a deportable offense which was essentially shoplifting from Wal-Mart, see Appellant's App. Vol. II p. 21 (factual basis for theft), and possession of marijuana, and the trial court sentenced him to one year of probation. When Bobadilla pled guilty, he was nineteen years old, was legally in the United States as a "Dreamer" under the Deferred Action for Childhood Arrivals (DACA) program, and had lived here for at least ten years.
[21] After Bobadilla pled guilty and was sentenced to probation, he spoke to an immigration attorney, who informed him that his DACA status was at risk and that he was subject to deportation. Bobadilla then filed a petition for post-conviction relief alleging ineffective assistance of trial counsel. Bobadilla claimed that had he been properly advised of the risk of deportation, he would have "declined to accept the plea," Appellant's App. Vol. II p. 14, in other words, he would have rejected it. The post-conviction court denied Bobadilla relief. Within nine days of being detained by U.S. Immigration and Customs Enforcement, Bobadilla asked for an emergency hearing to reconsider the denial of his post-conviction petition. All this leads me to the conclusion that Bobadilla would have rejected the plea and either insisted on going to trial or attempted to negotiate a plea that did not include deportable offenses. Indeed, Bobadilla testified at the post-conviction hearing that had trial counsel advised him of the risk of deportation, he would have "reacted differently" and "take[n] a different approach." Tr. Vol. II p. 17.
[22] The majority suggests that Bobadilla would have accepted the plea even had he been advised of the risk of deportation because of "the State's agreement to drop two additional misdemeanor charges" and "its agreement to an entirely suspended sentence to probation." Op. at ----. But this conclusion is at odds not only with Bobadilla's post-conviction petition and testimony but also with everyday experience. Most people in his situation would see removal to a country they have not lived in since they were children to be a serious enough punishment to justify the rejection of an arguably "favorable" misdemeanor plea and taking their chances at trial. See Lee , 137 S.Ct. at 1968 (explaining that it would not be irrational for the defendant to *790 choose "almost certain[ ]" deportation after a trial over "certain [ ]" deportation under a plea agreement). Therefore, while it is theoretically possible that Bobadilla would have accepted the plea had he been properly advised of the risk of deportation, there is most definitely "a reasonable probability" that he would have rejected it. See id. at 1967. As such, I would reverse the judgment of the post-conviction court.

The majority notes that Bobadilla "admitted to reading the certification statement at the end of the advisement form indicating that he had read and understood each paragraph on the form." Op. at ---- (emphasis added). The certification is not so broad. It provides:
I hereby certify ... that I have read the above statements or that they were translated or read to me, that I understand each paragraph that applies to my case, and that I do waive and give up each and every right listed.
Appellant's App. Vol. II p. 26 (emphasis added). Bobadilla did not read the advisements marked "N/A" by his trial counsel.