Massa, J., dissenting.
 

 The Court's analysis of our
 
 Segura
 
 precedent in the light of subsequent decisions of the United States Supreme Court is correct. But I respectfully part company in applying this updated standard to the facts of this sad case. Reversing a court on post-conviction requires that the facts and law point
 
 unerringly
 
 to a different outcome,
 
 Campbell v. State
 
 ,
 
 19 N.E.3d 271
 
 , 274 (Ind. 2014), and they don't on this record. There's enough factual and legal uncertainty that our deference must mean something and compel that the post-conviction court be affirmed.
 

 The appellant presents a seductively sympathetic case at a time when the issue of illegal immigration convulses the nation-a DACA Dreamer in the country for most of his life who ends up deported for boosting a bag of boxers or briefs. As the Court notes, had Bobadilla pled to 364 days suspended (instead of 365!) he'd likely still be in Hamilton County with his family. It is thus an act of compassion that our Court performs today, giving Bobadilla a chance, however remote, of getting back in the country. But the near impossibility of that occurring makes this holding all the more questionable. His own lawyers call today's relief "meaningless."
 
 [1]
 
 We alter the
 rules with little chance that anyone will benefit. And that should be avoided by a court of legal doctrine.
 

 The post-conviction court should be affirmed because Bobadilla presented insufficient
 
 evidence
 
 to sustain his burden of proof on both prongs of the
 
 Strickland
 
 test: deficient performance and prejudice.
 

 Regarding deficient performance, we have in the dock a respected criminal defense attorney with three decades of experience. His client was nineteen, spoke perfect English and never gave the lawyer any reason to believe he was in the country illegally (and thus vulnerable to deportation if his negotiated sentence exceeded a particular threshold). But in order to find deficient performance, we today all but adopt a new standard for Indiana lawyers-that they ask their clients if they are citizens, whatever their age, surname, or fluency. That is a bridge too far, and we should not impose this duty to determine the citizenship status of every client on defense lawyers in every case. In attempting to do justice, we unfortunately, unintentionally, but unmistakably malign a lawyer whose only real mistake was in failing to notice a single entry on a jail booking sheet noting Mexico as his client's place of birth. This was an oversight, to be sure. Does it establish he was constitutionally deficient and ineffective as a matter of law when he negotiated a fully suspended sentence for his client? I don't believe so.
 

 If we are to impose a requirement to inquire with or to advise unapparent non-citizens, the obligation should rest with our trial courts. Just as judges are required to inform defendants of other consequences of their guilty pleas under
 
 Boykin v. Alabama
 
 ,
 
 395 U.S. 238
 
 ,
 
 89 S.Ct. 1709
 
 ,
 
 23 L.Ed.2d 274
 
 (1969), so too can they be entrusted to advise defendants of those pleas' potential immigration consequences. Indeed,
 
 Padilla
 
 notes that, in addition to Kentucky, "many States require trial courts to advise defendants of possible immigration consequences."
 
 [2]
 
 And, in the wake of
 
 Padilla
 
 , the federal rules of criminal procedure now require a District Court, before accepting a guilty plea, to "inform the defendant of, and determine that the defendant understands," that "if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future." Fed. R. Crim. P. 11(b)(1)(O). There is no reason Indiana, like our federal
 brethren and several sister states, cannot provide this warning. This would be a better way to impose a new protection than retroactively declaring a competent lawyer ineffective.
 
 [3]
 

 As for prejudice (if deficiency
 
 were
 
 established), the law as declared by the United States Supreme Court now requires a petitioner to prove that, had he been properly advised of deportation consequences, he would have gone to trial rather than plead guilty to otherwise favorable terms.
 
 See
 

 Lee v. United States
 
 , --- U.S. ----,
 
 137 S.Ct. 1958
 
 , 1965,
 
 198 L.Ed.2d 476
 
 (2017) ("[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.") (internal quotation marks omitted). Petitioner here said no such thing, but we decide for him anyhow.
 
 [4]
 
 What this means for future cases on post-conviction relief remains to be seen.
 

 Slaughter, J., joins.
 

 As Bobadilla noted in his "Emergency Motion to Correct Error and Request For Expedited Hearing on the Matter," his post-deportation prospects are dim. Appellant's App. Vol. 2, p.46 ("After removal from the U.S.[,] Bobadilla will have no effective immigration remedy [and] any subsequent favorable decision on this motion or on appeal will likely be meaningless."). Despite the vacatur of his conviction through post-conviction relief, Bobadilla may still risk possible prosecution for illegal reentry under Section 1326 of Title 8 of the United States Code, rendering him deportable and subject to removal.
 
 See
 

 8 U.S.C. § 1326
 
 (b)(2). And Bobadilla's post-conviction DACA standing is unclear under the record. If Bobadilla-without being properly admitted or without being paroled (facilitating his entry into, and permitting him to temporarily remain in, the United States) by the Secretary of Homeland Security-enters the United States as a non-Dreamer, he may be "inadmissible" and subject to removal under Section 1182 of Title 8.
 
 See
 

 8 U.S.C. §§ 1182
 
 (a)(6)(A), (d)(5)(A).
 
 See also
 

 6 U.S.C. § 202
 
 (transferring authority for immigration matters to the Secretary of Homeland Security). And, in any event, even if he successfully returns to the United States, Bobadilla could still be convicted at trial, lose his DACA status, and possibly be deported again.
 

 Padilla v. Kentucky
 
 ,
 
 559 U.S. 356
 
 , 374 n.15,
 
 130 S.Ct. 1473
 
 ,
 
 176 L.Ed.2d 284
 
 (2010) ("See,
 
 e.g.
 
 , Alaska Rule Crim. Proc. 11(c)(3)(C) (2009-2010) ; Cal. Penal Code Ann. § 1016.5 (West 2008) ;
 
 Conn. Gen. Stat. § 54
 
 -1j (2009);
 
 D.C. Code § 16-713
 
 (2001) ; Fla. Rule Crim. Proc. 3.172(c)(8) (Supp. 2010);
 
 Ga. Code Ann. § 17-7-93
 
 (c) (1997); Haw. Rev. Stat. Ann. § 802E-2 (2007); Iowa Rule Crim. Proc. 2.8(2)(b)(3) (Supp. 2009); Md. Rule 4-242 (Lexis 2009) ; Mass. Gen. Laws, ch. 278, § 29D (2009); Minn. Rule Crim. Proc. 15.01 (2009);
 
 Mont. Code Ann. § 46-12-210
 
 (2009); N.M. Rule Crim. Form 9-406 (2009);
 
 N.Y. Crim. Proc. Law Ann. § 220.50
 
 (7) (West Supp. 2009); N.C. Gen. Stat. Ann. § 15A-1022 (Lexis 2007) ;
 
 Ohio Rev. Code Ann. § 2943.031
 
 (West 2006) ; Ore. Rev. Stat. § 135.385 (2007); R.I. Gen. Laws § 12-12-22 (Lexis Supp. 2008); Tex. Code. Ann. Crim. Proc., Art. 26.13(a)(4) (Vernon Supp. 2009); Vt. Stat. Ann., Tit. 13, § 6565(c)(1) (Supp. 2009);
 
 Wash. Rev. Code § 10.40.200
 
 (2008);
 
 Wis. Stat. § 971.08
 
 (2005-2006).").
 

 The trial court below is already providing this warning, to a degree, by placing a box to be checked by defense counsel in consultation with the client. But this allows for misunderstandings, as occurred in this case when the client failed to disclose his status to the lawyer. If the court reads the warning in the guilty plea colloquy, this danger is removed.
 

 The Court must
 
 infer
 
 that Bobadilla would have gone to trial, in the absence of any such assertion, in order to reach an admirable and equitable outcome when other government actors better suited than a court of last resort might have helped avoid this perfect storm, assuming there isn't more to this story.
 
 See
 

 Sargent v. State
 
 ,
 
 27 N.E.3d 729
 
 , 734-36 (Ind. 2015) (Massa, J., dissenting). An agreed sentencing modification, or forbearance by immigration officials, would have mooted the issue.
 
 See
 
 Ginger Thompson and Sarah Cohen,
 
 More Deportations Follow Minor Crimes, Records Show
 
 , N.Y. Times (Apr. 6, 2014), https://www.nytimes.com/2014/04/07/us/more-deportations-follow-minor-crimes-data-shows.html. It is fair to ask the authorities involved: did it have to come to this?