IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of | No. 84391-5-I |
| EDMOND CLAY OVERTON, | DIVISION ONE |
| | UNPUBLISHED OPINION |
| Petitioner. | |

DÍAZ, J. — In this personal restraint petition (PRP), Edmond Overton argues his counsel was ineffective for failing to explain to him that the State could request, and he could receive, a much longer sentence if he rejected its plea offer. Overton also argues his counsel was ineffective for failing to provide him with discovery to evaluate the evidence against him. He asks the court to grant his PRP, vacate his conviction, and allow him to choose to accept the State's original plea offer. We deny Overton's PRP and affirm his judgment and sentence.

## I.      BACKGROUND

This court's prior opinion in the direct appeal of this matter presented the underlying facts in this case, which we merely summarize here. In October 2017, Overton robbed an acquaintance and killed that person's roommate. State v. Edmond Clay Overton, No. 81528-8-I, slip op. at 1 (Wash. Ct. App. Sept. 27, 2021)

(unpublished), https://www.courts.wa.gov/opinions/pdf/815288.pdf. The State charged Overton with inter alia murder in the first degree and, as the predicate offense, robbery in the first degree. Overton, No. 81528-8-I, slip op. at 1.

Over a period of at least nine months, the parties attempted to negotiate a settlement. In June 2018, Overton's counsel proposed, in writing, that his client:

> Plead guilty to Murder 2 w/firearm and Assault 2 w/firearm. I believe that the murder 2 charge would then control his range . . . I am seeking an agreed recommendation of 336 which would be 28 years . . . this proposal takes into consideration my belief that this is the top end of what he would likely accept.

In response, the State asked if Overton would be "willing to . . . testify [on behalf of the State] at a potential trial" of a co-defendant. In discussing the content of Overton's testimony, his counsel advised the State:

> I got over to visit with Mr. Overton today and brought him the [ER 410 statement]. He needs some more time to consider it . . . he needs to consult with his father. I spoke with his father last night and I don't anticipate this will be a problem, but it is going to require a delay.

In January 2019, the State informed Overton that "a [ER] 410 [statement] and testimony are not a requirement of the plea bargain" and advised it would:

> accept your counter offer of a plea to second degree murder with a firearm and second degree assault with a firearm—That would be 240 months for the murder 2 plus the 96 months of enhancements equaling 336. Please let me know when we can put this on for a plea.

The parties requested, and the court set, a hearing for March 15, 2019 to amend the information and to change Overton's plea. Four days prior to the hearing, Overton's counsel advised the State he was having a final meeting with Overton the next day to "go over his plea paperwork if he is fully on board."

At the hearing, Overton did not change his plea and, instead, requested new counsel and a continuance. Overton included a declaration expressing his dissatisfaction with his attorney:

I don't feel that my attorney has kept me informed about my case.

[. . .]

My attorney has presented me with a plea offer that does not seem like he is fighting for me.

I am fighting for my life and I want someone representing me who is going to make every effort to defend me and give me a chance to have a life not behind bars.

A few weeks later, Overton argued his own motion for new counsel:

Overton: I just want new counsel because I don't feel like I have – I'm in his best interest, that he's going to fight for me, because I'm fighting for my life here; you know? And I don't feel like he's doing that for me.

Court: All right. Is there anything else that you wish to tell me?

Overton: No, it's all in the paper, right here

Overton reiterated his claim that he did not see his attorney frequently and, when he visited him, "it's the same thing he's telling me over and over" and that he wanted to see his attorney "fighting for me." The court denied Overton's motion.

The matter went to trial and a jury convicted Overton of murder in the first degree, robbery in the first degree, and assault in the first degree (of a different victim). Overton, No. 81528-8-I, slip op. at 2. The judge imposed a standard range sentence of 517 months, 424 of which (approximating 35 years) would be consecutively served. Id. Overton directly appealed his conviction, which we affirmed. Id. at 1.

3

Thereafter, Overton filed the present PRP. This court's commissioner appointed counsel.

## II. ANALYSIS

### A. Law on Ineffective Assistance of Counsel

"To obtain relief through a PRP, petitioners . . . must show they are being unlawfully restrained under RAP 16.4." In re Pers. Restraint of Williams, 198 Wn.2d 342, 352, 496 P.3d 289 (2021). And "[p]etitioners bear the burden of proving unlawful restraint by a preponderance of evidence." Id.

Normally, to obtain relief from a PRP based on a constitutional error, a petitioner must make two showings: "(1) a constitutional error occurred and (2) the error resulted in actual and substantial prejudice." Id. at 353. However, where a petitioner raises a claim for which there was "no previous opportunity for judicial review" a petitioner is not required to make a threshold showing of prejudice. In re Pers. Restraint of Gentry, 170 Wn.2d 711, 714-15, 245 P.3d 766 (2010). Instead, the petitioner must show the conditions or manner of restraint violate state law or the constitution. Id. at 715.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the accused the right to effective assistance of counsel. State v. Estes, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). An ineffective assistance of counsel claim is a mixed question of law and fact that we review de novo. State v. Jones, 183 Wn.2d 327, 338, 352 P.3d 776 (2015).

The appellant bears the burden of showing "(1) counsel's performance was deficient and (2) 'the deficient performance prejudiced the defense' to show their

counsel was ineffective." State v. Drath, 7 Wn. App. 2d 255, 266, 431 P.3d 1098 (2018) (quoting State v. Grier, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011)). A defendant cannot show ineffective assistance if they fail to satisfy either prong. Id. (quoting Strickland v. Washington, 466 U.S. 668, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "To establish deficient performance, a petitioner must show that counsel 'made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" United States v. Giamo, 153 F. Supp. 3d 744, 755 (E.D. Pa. 2015) (quoting Strickland, 466 U.S. at 687).

"The guarantee of effective assistance of counsel extends to the plea bargaining stage, whereby '[d]efense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.'" Id. (quoting Missouri v. Frye, 566 U.S. 134, 145, 132 S. Ct. 1399, 1408, 182 L. Ed. 2d 379 (2012)) (alteration in original).

"This duty requires counsel to advise a defendant so that they may 'make a reasonably informed decision whether to accept a plea offer.'" Id. (quoting United States v. Day, 969 F.2d 39, 43 (3d Cir.1992)). A federal circuit court "has further identified 'potential sentencing exposure' as a factor that must be included in this plea advisory process, requiring that counsel know the sentencing guidelines and relevant circuit precedent." Id. (quoting United States v. Bui, 795 F.3d 363 (3d Cir. 2015)).

"To establish prejudice, the defendant must 'prove that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" Drath, 7 Wn. App. 2d at 267 (quoting

State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). "Although this standard is lower than a preponderance standard, the defendant must affirmatively 'show more than a 'conceivable effect on the outcome.'" Id. (quoting Estes, 188 Wn.2d at 458). "A reasonable probability is a 'probability sufficient to undermine confidence in the outcome.'" Id. (quoting Estes, 188 Wn.2d at 458).

"In the context of plea negotiations, the 'defendant must show the outcome of the plea process would have been different with competent advice.'" Id. (quoting Lafler v. Cooper, 566 U.S. 156, 163, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012)). "'In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the [alternate] plea offer would have been presented to the court.'" Id. (quoting Lafler, 566 U.S. at 164).

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. And, we presume that counsel is effective and generally competently represents their client. Id.

B.    Discussion

In his PRP, Overton first asserts that:

Counsel failed to communicate to the defendant that the potential of sentencing after trial, if given a guilty verdict could be and/or would be harsher than the pre-trial offer of 28 years discussed by the state and counsel . . . failed to communicate the difference between a plea and a verdict, which had a significant impact on the defendant's decision to go to trial.

Additionally, Overton asserts he "was denied the right to provide an effective defense when he was denied his discovery from counsel."

6

As to the first assertion, Overton offers no detailed, let alone corroborating, evidence that his counsel's performance was deficient. Specifically, in his own declaration attached to his PRP, Overton does not describe the nature of the information he requested or received regarding whether or how a plea agreement would implicate the length of his sentence. Moreover, in none of the pleadings or hearings related to his motion to discharge counsel does Overton claim his counsel failed to provide him any specific information, or that he even felt uninformed in any specific way. In other words, at no point prior to filing his PRP did Overton argue his counsel left him in any defined way uninformed, despite the fact that the evidence shows Overton and his counsel discussed the matter multiple times, and that Overton also discussed a potential plea with his father. Instead, even when asked by the court, the crux of his complaints related to his counsel's failure to "fight for him."

With no detailed or corroborating information, Overton's claims are but "bald assertions" and "conclusory allegations," which are inadequate. In re Rice, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). A defendant "must state with particularity facts which, if proven, would entitle him to relief." Id. Overton failed to do so here.

By contrast, as Overton concedes, the court in Drath considered a case with the type of testimony and corroborating evidence that is lacking here. In Drath, the defendant described with particularity a meeting during which her counsel gave her a sentencing worksheet that contained incorrect information on it. Drath, 7 Wn. App. 2d at 258. Here, Overton's declaration did not mention any of the approximately five meetings counsel had with him running up the expected change

7

of plea, or reference any documents exchanged during such meetings. On the contrary, we have evidence of multiple meetings occurring over a period of significant time, where counsel expressed his understanding that he and his client were in agreement about, and prepared to accept, the State's offer. There is nothing in the record which suggests that he lacked information sufficient "'to make a reasonably informed decision whether to accept a plea offer.'" Giamo, 153 F. Supp. 3d at 755 (quoting Day, 969 F.2d at 43).

For these reasons, Overton fails to show "that counsel 'made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Id. (quoting Strickland, 466 U.S. at 687). Thus, we conclude Overton's argument fails the first prong of Strickland.

As to the second prong of Strickland, Overton must show "'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" Drath, 7 Wn. App. 2d at 267 (quoting Kyllo, 166 Wn.2d at 862). In so doing, he "must affirmatively 'show more than a *conceivable* effect on the outcome.'" Id. (quoting Estes, 188 Wn.2d at 458) (emphasis added). He does not make such a showing for two initial reasons.[1]

First, Overton's declaration nowhere states that he even would have accepted the plea offer if his counsel had explained to him that he risked a longer

---

[1] Overton seems to suggest that, when a lawyer's deficient performance results in a defendant receiving any additional years on his sentence after declining an offer from the State, prejudice inherently occurs. We decline to address this argument as made in passing. Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

sentence by declining it. We look to contemporaneous evidence to substantiate a defendant's wishes at the time of trial. Lee v. United States, 582 U.S. 357, 369, 137 S. Ct. 1958, 1967, 198 L. Ed. 2d 476 (2017). In that case, Lee argued he would not have pled guilty if he knew the consequence would be deportation. Id. at 364. The court concluded that his retrospective argument was insufficient to show prejudice because "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Id. at 369

Here, we are not presented with even an affirmative statement that Overton would have accepted such an offer in that situation. Instead, contemporaneous evidence shows that Overton rejected a plea offer, and offers no other "contemporaneous evidence" showing his counsel's alleged failure to advise him would have persuaded him to accept the plea.

Second, Overton offers no evidence that the court would have accepted the plea for 28 years even if his counsel had provided him the legal advice he now claims he lacked and if he had agreed to the offer. Nowhere in the transcript of the pretrial hearings did the court indicate that if such a plea were available, it would grant it (such as by referencing a standard range, etc.). In his reply, Overton acknowledges that he must offer more than conjecture on this important fact. Here, we lack even conjecture.

For these reasons, we conclude that Overton failed to "surmount[] Strickland's high bar," showing neither that his counsel was deficient nor that any possible deficiency was prejudicial. Lee, 582 U.S. at 368.

9

Finally, we turn to Overton's argument that counsel failed to provide him with discovery, with which he could make an informed plea decision. We apply a similar analysis to above and review the evidence contemporaneous to Overton's trial, rather than post hoc assertions. Lee, 582 U.S. at 364. At that time, Overton complained only generically that he did not "feel that [his] attorney has kept [him] informed about [his] case," but did not mention any dispute over discovery with his counsel, even when he sought to remove him. Moreover, "[w]hile CrR 4.7(h)(3) and RPC 1.16(d) require disclosure, they do not entitle a defendant to unlimited access to an attorney's file or discovery." State v. Padgett, 4 Wn. App. 2d 851, 854, 424 P.3d 1235 (2018). And, Overton again does not provide evidence (even in his own declaration) that he would have accepted the plea had he been aware of any additional information in his file. Lee, 582 U.S. at 368 (casting a skeptical eye on "post hoc assertions"); see also State v. A.N.J., 168 Wn.2d 91, 111-12, 225 P.3d 956 (2010) (holding only "*counsel* must reasonably evaluate the evidence against the accused and the likelihood of a conviction if the case proceeds to trial so that the defendant can make a meaningful decision as to whether or not to plead guilty).

Therefore, we conclude that Overton did not satisfy his burden to show that his counsel was constitutionally defective in either way asserted or, even assuming Overton did establish some such a deficiency, that prejudice resulted.[2]

---

[2] In his PRP, Overton also argues that he is entitled to relief from confinement because the trial court wrongly denied his motion to discharge counsel for several reasons: (1) he and his counsel had difficulty communicating; (2) Overton disagreed with his counsel's advice, in part, because he believed his counsel did not have his best interests in mind; or (3) the court did not gather full information

III.    CONCLUSION

We deny Overton's petition and affirm his judgment and sentence.

Díaz, J.

WE CONCUR:

Birk, J.

Smith, C.J.

---

about these complaints.  Overton's attorney did not pursue this assignment of error on appeal.  As to Overton's first two arguments, they are unavailing because a defendant has the right to a competent lawyer, but not one of their own choosing. State v. Stenson, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997); see also State v. Estes, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017) (quoting U.S. CONST. amend. VI; CONST. art. I, § 22).  And, mere miscommunications and disagreements on trial strategy between a counsel and client are not a violation of Strickland unless a defendant shows the attorney's conduct "fell below an objective standard of reasonableness," which Overton does not.  State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).  As to the failure to gather information, when Overton moved to discharge counsel, the trial court asked him if he had anything else to add, Overton responded "no, it's all in the paper right here."  There, and at trial, Overton did not explain what information his attorney failed to pursue.  Thus, this additional claim fails.