Filed 12/30/24  P. v. Mualevu CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>VUTORO MUALEVU,<br><br>        Defendant and Appellant. | A169197<br><br>(San Mateo County<br>Super. Ct. No. SC066925A) |

Vutoro Mualevu (appellant) appeals from the trial court's denial of his postconviction motion to vacate his guilty plea pursuant to a statute authorizing such relief when, among other grounds, a conviction is invalid because the defendant did not understand its immigration consequences. (Pen. Code, § 1473.7, subd. (a)(1).)[1]  We affirm.

BACKGROUND

In 2008, appellant, a lawful permanent resident was charged with attempted murder (§§ 664, 187), aggravated mayhem (§ 205), and related

---

[1] All undesignated statutory references are to the Penal Code.

1

charges and enhancement allegations.[2]  At the preliminary hearing, law enforcement officers testified that a 65-year-old man was so badly beaten outside a motel room that he was in a coma for weeks, had five teeth knocked out, and sustained numerous injuries including a severe facial fracture requiring a 14-hour surgery.  An eyewitness to the assault identified appellant as one of two assailants.  Less than two hours after the assault, law enforcement detained appellant, whose hand was swollen and bleeding. Appellant initially denied being involved in the incident at the motel and denied knowing the coassailant, but later admitted he and his cousin had committed the attack, repeatedly striking the victim in the head.  Appellant's cousin also told officers he and appellant attacked the victim.

In 2009, appellant entered a no contest plea to attempted murder with a great bodily injury enhancement and three counts of assault with a deadly weapon, in exchange for a stipulated term of 13 years in prison and dismissal of the remaining charges, including aggravated mayhem.  He was so sentenced.

In 2019, upon his release from prison, appellant was placed in immigration detention and told he was going to be deported to his home country, Fiji, because of the 2009 conviction.  Appellant sought relief from deportation in immigration court under the United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment treaty, arguing he faced persecution because he had relatives who participated in an unsuccessful military coup in Fiji in the early 2000s. This request for relief was denied.

---

[2] A codefendant was also charged.

In 2023, appellant filed the underlying motion to vacate his conviction.[3] At an evidentiary hearing on the motion, appellant testified that he came to the United States from Fiji as a lawful permanent resident in 1999, when he was 20 years old.[4] His mother, stepfather, and some extended family members lived in the United States. Between 1999 and his arrest in 2008, he worked a series of jobs: dismantling engines at a wharf in California; demonstrating traditional Fijian attire for tourists visiting the Pacific Cultural Center in Hawaii; cleaning for a private contractor at Pearl Harbor; and working as a carpenter and security guard in California.

At the time of his arrest in 2008, his only connection to Fiji was an aunt who still lived there. He could understand simple English words, but not more complex ones. He did not have a Fijian interpreter when he met with his criminal attorney, although an interpreter was provided for court proceedings. Before he entered his plea, his attorney did not tell him the immigration consequences of his conviction. It was only at the sentencing hearing that his attorney told him he would be sent back to Fiji after serving his sentence.

Appellant testified he feared for his life if he returned to Fiji because he had relatives who participated in an unsuccessful military coup there in the early 2000s. He would not have agreed to the plea if he knew it meant he would be deported, and instead would have gone to trial, even though he knew he would lose the case at trial and could be sentenced to life in prison.

---

[3] Appellant initially filed his motion in propria persona. After the trial court appointed counsel, appellant filed an amended motion. Appellant's amended motion, which referred to and attached immigration documents and other records, was filed under seal.

[4] Appellant testified by video and through a Fijian interpreter.

On cross-examination, appellant admitted his plea form was translated in Fijian, including an advisement that, if he was not a citizen, conviction will result in deportation.[5] Appellant testified, "[t]he way it was interpreted to me was just being read for me to hear but nothing really emphasized for me to know what the consequences would be." Appellant further admitted that when the judge took his plea, a Fijian interpreter was present, and the judge told him if he was not a citizen the conviction would lead to deportation.[6] When appellant learned the immigration consequences at his sentencing hearing, he did not seek to withdraw the plea because he did "not know anything about the law."

Appellant also called a friend who testified that she had known appellant since around 2002 or 2003, appellant lived with her and her family from around 2006 to 2008, he was active in the Fijian church community, and his English was fine for "simple" subjects but he required translation for more detailed or complex matters.

The People submitted, among other documentary evidence, a declaration from the deputy district attorney responsible for pretrial dispositions at the time of appellant's plea. The district attorney averred that, in light of the victim's age and significant injuries, no " 'immigration safe' " offers could have resolved the case.

The trial court denied appellant's motion to vacate. The court reasoned, "I don't find [appellant] to be credible on any material issue"

---

[5] The plea form was submitted by the People and includes the immigration advisement as well as a handwritten statement that it was interpreted in Fijian on the date appellant signed it.

[6] The reporter's notes of the plea and sentencing hearings were not available because they had been destroyed (see Gov. Code, § 68152, subd. (g)(4)(A)).

4

finding "the evidence does show that he was advised at that time [of his plea] and that he did understand that he was going to be deported." The court found in the alternative that it was not "reasonably probable that [appellant] would have rejected the plea offer had he known of the immigration consequences." The court noted appellant's "ties to the U.S. were, in the Court's view, nowhere near what we typically see in these types of cases, these 1473.7 cases. He had been here for less than nine years at the time" and "had no children. He had no significant other here. His mom, his stepdad, and some uncles were here. He had no established job or profession or career here, and he had no formal education here." In addition, appellant could not have obtained an immigration-safe offer and admitted he would lose at trial, "[s]o I just don't find it credible that he would prefer to be deported after a life sentence with possibility of parole, which would possibly mean spending the rest of his life in a U.S. prison, versus after just some portion of 13 years—in this case, it ended up being 9—especially at his young age at the time of this plea."

## DISCUSSION

"To prevail under section 1473.7, a defendant must demonstrate that his conviction is 'legally invalid due to prejudicial error damaging [his or her] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.' (§ 1473.7, subd. (a)(1).) The defendant must first show that he did not meaningfully understand the immigration consequences of his plea. Next, the defendant must show that his misunderstanding constituted prejudicial error." (*People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*).) We need not decide whether appellant satisfied the first showing because we find he failed to establish the second, prejudice.

5

" '[P]rejudical error . . . means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.' " (*Espinoza, supra,* 14 Cal.5th at p. 319.)  To determine prejudice, "courts must 'consider the totality of the circumstances.'  [Citation.]  'Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible.' [Citations.]  Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial.  [Citation.]  These factors are not exhaustive, and no single type of evidence is a prerequisite to relief." (*Id.* at pp. 320–321.)

"A defendant must provide ' " 'objective evidence' " ' to corroborate factual assertions.  [Citation.]  Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Espinoza, supra,* 14 Cal.5th at p. 321.) " 'Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.  Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.' " (*People v. Garcia* (2022) 79 Cal.App.5th 1059, 1066–1067; see also *People v. Curiel* (2023) 92 Cal.App.5th 1160, 1178 ["It is not enough for the defendant simply to declare that he or she would not have accepted a plea that would result in

6

deportation. [Citation.] Rather, the defendant must 'corroborate such assertions with "objective evidence." ' '"].)

"We apply independent review to evaluate whether a defendant has demonstrated a reasonable probability that he would have rejected the plea offer had he understood its immigration consequences. [Citation.] ' "[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citation.] When courts engage in independent review, they must give deference to the trial court's factual determinations if they are based on ' " 'the credibility of witnesses the [superior court] heard and observed.' " ' [Citation.] But when the trial court's findings 'derive entirely from written declarations and other documents,' the trial court and the reviewing court ' "are in the same position," ' and no deference is owed." (*Espinoza*, *supra*, 14 Cal.5th at pp. 319–320.)[7]

We first consider " 'whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible,' " "the defendant's probability of obtaining a more favorable outcome if he had rejected the plea," and "the difference between the bargained-for term and the likely term if he were convicted at trial." (*Espinoza*, *supra*, 14 Cal.5th at p. 320.) It is undisputed that appellant could not have obtained an immigration-safe plea bargain; his chances of acquittal at trial were exceedingly slim (based on the preliminary hearing evidence and appellant's own concession on this point during the evidentiary hearing); and, if found guilty of aggravated mayhem at trial, he faced a sentence of life in prison with the possibility of parole (see

---

[7] Appellant challenges the trial court's adverse credibility finding. We need not decide the issue because our conclusion is the same regardless of whether we defer to this finding.

7

§ 205).  Given that appellant was only 29 years old at the time of his plea, the difference between the stipulated 13-year sentence and a life sentence was substantial, rendering it not reasonably probable that he would have chosen to risk going to trial with such a remote chance of success.

Appellant relies on a United States Supreme Court case finding prejudice can be established even when the chance of acquittal at trial is slim because a defendant may choose to "reject[] any plea leading to deportation—even if it shaved off prison time—in favor of throwing a 'Hail Mary' at trial." (*Lee v. United States* (2017) 582 U.S. 357, 367–368 [considering prejudice for ineffective assistance of counsel claim]; see also *People v. Vivar* (2021) 11 Cal.5th 510, 529 (*Vivar*) [§ 1473.7 prejudice analysis and prejudice analysis for ineffective assistance claim based on "lawyer's deficient advisement on immigration consequences" take "a similar approach"].)  But the Supreme Court indicated such prejudice was generally limited to circumstances where the difference in potential sentences was not significant: "If deportation were the 'determinative issue' for an individual in plea discussions[] . . . ; if that individual had strong connections to this country and no other[] . . . ; and *if the consequences of taking a chance at trial were not markedly harsher than pleading*," then even a remote possibility of avoiding deportation through an acquittal at trial "could make all the difference." (*Lee*, at p. 371, italics added; see also *ibid.* ["Balanced against holding on to some chance of avoiding deportation was a year or two more of prison time"].)  Such is not the case here.

To the extent appellant contends he would have preferred to spend his life in a United States prison over being deported to Fiji, he has not provided the requisite corroboration.  Appellant learned he would be deported at his sentencing hearing, yet he made no objection or protest at the hearing, nor

8

did he attempt to withdraw his plea or take any other action during his prison term documenting a preference for going to trial. (Cf. *Vivar, supra,* 11 Cal.5th at p. 520 [after learning immigration consequences a few days after sentencing, the defendant "promptly sent a series of letters to the court expressing confusion about the situation" and "ma[king] plain that '[i]f I would have been made aware of these facts I would never have plead[ed] Guilty to this Charge' "].) In addition, appellant presented no evidence that his relatives' participation in an attempted coup in the early 2000s created a credible threat to his safety in Fiji at the time of his plea in 2009. That appellant spent four years in immigration detention attempting to avoid deportation does not corroborate his claim that he would rather have risked a sentence of life in prison when he was 29 years old for an extremely remote chance of avoiding deportation.

Appellant's ties to the United States do not alter the totality of the circumstances. "Ties to the United States are an important factor in evaluating prejudicial error under section 1473.7 because they shed light on a defendant's immigration priorities. [Citation.] . . . Community ties may be established by length of residence; immigration status; lack of connection to the country of origin; connections to family, friends, or the community; work history or financial ties; or other forms of attachment." (*Espinoza, supra,* 14 Cal.5th at p. 321.) In 2009, appellant's mother, stepfather, and some extended family members lived in the United States, but he had only lived in the United States for 10 years, did not have a significant other or children in the United States, and did not have an established job or career in the United States. We do not doubt appellant's desire to remain in the United States. However, his ties are not so substantial as to outweigh the significant disparity in prison time he faced if he went to trial. (Cf. *Espinoza*, at

9

pp. 322–323 [substantial ties established where the defendant "came to California when he was 13 years old," "had lived in California for 23 years" "[a]t the time of the plea," had a "wife and five children [who] were United States citizens," "[h]is parents and siblings lived in the United States," and he "was the financial provider for his family"]; *Vivar*, *supra*, 11 Cal.5th at p. 530 [substantial ties established where the defendant "was brought to this country at age six as a lawful resident, and he attended schools, formed a family, and remained here for 40 years" and, "[a]t the time of his plea, he had two children, two grandchildren, and a wife, all of whom are citizens"].)

In sum, considering the totality of the circumstances, appellant failed to establish prejudice from any misunderstanding about the immigration consequences of his plea.

DISPOSITION

The order is affirmed.

SIMONS, J.

We concur.

JACKSON, P. J.
CHOU, J.

(A169197)

10