# IN THE COURT OF APPEALS OF IOWA

No. 25-0166
Filed December 3, 2025

**MCKINLEY DUDLEY JR.,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Gregg R. Rosenbladt, Judge.

An applicant appeals the district court's denial of postconviction relief. **AFFIRMED.**

John J. Bishop, Cedar Rapids, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**GREER, Judge.**

McKinley Dudley Jr. appeals the denial of his application for postconviction relief (PCR), arguing he was convicted in violation of his constitutional right to effective assistance of counsel when his defense attorney allowed him to plead guilty to an enhanced charge without a full understanding of the potential penalties. Contrary to Dudley's allegation, we find he was fully advised about his habitual-offender enhancement prior to entering his guilty plea, and so we are unconvinced that Dudley would not have proceeded but for counsel's alleged errors. Because Dudley cannot show the prejudice required for an ineffective-assistance claim, we affirm the denial of his PCR application.

## I. Background Facts and Proceedings.

Following a March 2021 arrest for driving under the influence, Dudley reached a deal with the State to resolve several pending charges. According to the written plea agreement, Dudley would plead guilty to "Operating While Intoxicated—3rd Offense, Habitual Felony," which carried a term of imprisonment "not less than three years and not to exceed 15 years." In exchange, the State would dismiss Dudley's charges for eluding and driving while revoked, as well as seven pending misdemeanor cases. Both parties remained free to make sentencing recommendations. Dudley initialed the paragraphs in the plea agreement setting out the terms.

Two weeks after Dudley signed his plea agreement, defense counsel asked the court to postpone the plea hearing and order a competency evaluation. Although counsel had advised Dudley regarding the details of his plea deal, she divulged "each point of the discussion [had to] be explained four times" and Dudley

seemed to sometimes forget what she had told him. Counsel would later testify that she filed the motion out of an abundance of caution because she "needed th[e] assurance that he was really able to follow through." The proceedings were paused for two months while Dudley was evaluated. Ultimately, a psychiatrist deemed him competent to stand trial, finding no "symptoms which are currently influencing his understanding of the legal process."

At a plea hearing four weeks later, the district court questioned Dudley regarding the terms of his plea agreement and the penalties he faced. Further, the district court questioned counsel about details contained in the plea agreement and how the sentence might be impacted. Then, the district court explained to Dudley that the court was not bound by the plea agreement "so [the court has] to make sure you understand the possible maximum penalties." Satisfied with Dudley's "full understanding of the nature of the charge and the possible consequences," the district court accepted his plea. It later sentenced Dudley to a term of imprisonment not to exceed fifteen years, rejecting his request for inpatient treatment in lieu of confinement. Because Dudley pled guilty under the habitual-offender enhancement, *see* Iowa Code section 902.8 (2021), the court imposed a three-year mandatory minimum.[1]

Dudley filed a PCR application alleging his conviction was obtained in violation of his state and federal rights to effective assistance of counsel. Specifically, Dudley claimed that defense counsel "failed to ensure that he understood that he was pleading guilty . . . as a habitual offender" subject to a

---

[1] Dudley unsuccessfully challenged his sentence on direct appeal. *See State v. Dudley*, No. 21-1725, 2022 WL 3907760, at *1 (Iowa Ct. App. Aug. 31, 2022).

fifteen-year maximum sentence and that "[b]ut for counsel's errors, [he] would not have pleaded guilty." Following a trial in October 2024, the PCR court denied relief on the merits. It found by a preponderance of the evidence that "Mr. Dudley did understand the nature of the plea" and, independent of that, the legal assistance of defense counsel did not "prejudice[] [Dudley's] case in any way." Dudley appeals.

## II. Discussion.

Because Dudley asserts a violation of his constitutional rights, our review is de novo. *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021). We evaluate claims of ineffective assistance under a familiar two-prong test, asking whether counsel breached an essential duty and whether prejudice resulted. *Smith v. State*, 7 N.W.3d 723, 726 (Iowa 2024). We may approach these questions in either order. *See Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021) ("If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." (citation omitted)). Here, our analysis begins and ends with prejudice.

To meet the prejudice requirement, an applicant challenging counsel's advice about a plea deal "must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial." *Doss*, 961 N.W.2d at 709 (citation omitted). To this end, Dudley testified at the PCR trial that: he was never advised about the habitual-offender enhancement, he "really thought [he] was going to get the three years," and he would have refused to plead guilty if he had known his sentence might be longer. However, a defendant's post-hoc testimony is rarely enough to meet the

prejudice requirement. *See id.* at 713–14; *Dempsey v. State*, 860 N.W.2d 860, 873 (Iowa 2015). To ferret out self-serving allegations, we "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Doss*, 961 N.W. 2d at 714 (quoting *Lee v. United States*, 582 U.S. 357, 369 (2017)).

The record in Dudley's criminal case undercuts his after-the-fact testimony. During the plea hearing, the district court discussed the habitual offender enhancement with Dudley at length. He initially expressed some confusion:

> THE COURT: All right. So, Mr. Dudley, do you understand with the Habitual Offender enhancement, you're facing the possibility of up to fifteen years in prison?
> THE DEFENDANT: Yes, but that wasn't the deal. That's why I signed this paper. The deal was she said that if I signed the paper, then he would agree to dismiss the charges then it would just be three years. That's what the deal was. That's the only reason I signed the paper.

The court then asked the prosecutor and defense counsel to verify that the plea agreement called for open sentencing. Both attorneys confirmed, and the court continued its colloquy with Dudley:

> THE COURT: All right. So, Mr. Dudley, it sounds like the State and you will be making different recommendations for what the sentence should be. Is that your understanding?
> THE DEFENDANT: Yeah.
> THE COURT: Okay. The Habitual Offender enhancement is an indeterminate prison term not to exceed fifteen years. There's a requirement that there's a mandatory minimum period of time that needs to be served of three years, so I think that's maybe where you're getting the three years, but that that mandatory minimum time has to be served before you're eligible for parole, and then parole will be determined based on whatever the normal parole procedures are. Do you understand that?
> THE DEFENDANT: Yeah, I do.
> THE COURT: Okay. So I just want to make sure that you understand there's not going to be a recommendation for a three year prison sentence, that's not the option. It's a fifteen-year prison sentence, that can be suspended, you know, and then there's, of course, the mandatory minimum time period we need to deal with,

but I just want to make sure you understand that.  Do you understand that?
          THE DEFENDANT: So are you saying that I get fifteen years and then I automatically have to do the three years no matter what?

At this point, the prosecutor interjected that if the district court decided to suspend Dudley's sentence, "then the three-year mandatory minimum would also be suspended."   The court concurred on this point, and Dudley affirmed his understanding that the parties were free to make separate requests at sentencing. The court then continued:

> THE COURT: So the—It would appear that the plea agreement benefit, I guess, is mostly that you get to argue whatever you want to on the OWI Third . . . plus a dismissal of several other charges, and then the State is able to recommend whatever they want to at sentencing, including, of course, that you serve the fifteen years.  Do you understand that?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Okay. And a mandatory minimum three years. Do you understand that?
> THE DEFENDANT: Yes.

While Dudley may have arrived at the plea hearing with some wrong ideas about the deal he had struck, it is clear from this record that any such confusion was resolved during the district court's colloquy.  By the time he was asked to confirm his guilty plea, Dudley professed an understanding of the habitual-offender enhancement.  He chose to plead guilty anyway.  And by doing so, he secured the dismissal of several other charges.  *See id.* (noting the fact that a defendant "avoided three other charges by pleading guilty" undermined his allegation that he would not have done so absent counsel's shortcomings).  These facts indicate to us that Dudley pled guilty because he believed it was his most advantageous option, not because he misunderstood his sentencing exposure.

Dudley suggests that we should disregard the statements he made during his plea colloquy because he "had a limited ability to understand" the proceeding. The PCR court rejected this argument and on our review of the record, so do we. Dudley was deemed competent to stand trial just a few weeks before the plea hearing. The psychiatrist who had evaluated him later opined that Dudley had been "able to understand . . . sentencing and the sentence he was potentially up against." And both the parties and the court expressed a similar position on Dudley's competence on the record at the plea hearing. So we take Dudley's statements at face value when he affirmed to the court that he understood the consequences of his plea. After all, the concept of a sentencing enhancement was not new to Dudley, whose criminal history spans four decades. In fact, he testified at the postconviction trial that he had previously been sentenced as a habitual offender.

### III. Conclusion.

On our de novo review, we cannot find that Dudley would not have pled guilty but for counsel's alleged failure. The record reflects that Dudley understood his sentencing exposure and chose to plead guilty anyway. Thus, the PCR court did not err in denying his PCR application. And because Dudley cannot show prejudice, we affirm without reaching the question of counsel's performance.

**AFFIRMED.**