Filed 5/11/26  P. v. Fernandez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ABEL FERNANDEZ,<br><br>    Defendant and Appellant. | B341463<br><br>Los Angeles County<br>Super. Ct. No. SA037937 |

        APPEAL from an order of the Superior Court of Los Angeles County, William L. Sadler, Judge.  Reversed and remanded with instructions.

        Christopher Lionel Haberman, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Abel Fernandez appeals the trial court's denial of his motion to vacate a conviction pursuant to section 1473.7. We reverse and remand with instructions for the trial court to enter an order granting the motion. Undesignated citations are to the Penal Code.

In 2000, Officer Araceli Negrete called a pager number, leaving her phone number. A few minutes later, Negrete received a call from a man who identified himself as Abel. Negrete and the caller arranged to meet in a parking lot in twenty minutes for Negrete to buy $60 worth of narcotics. Abel said he would be wearing sweats.

Negrete drove to the parking lot in an unmarked car. Fernandez approached the car, wearing green sweats. Negrete drove off before Fernandez reached her. Another officer watching the parking lot saw Fernandez drop what turned out to be a plastic baggy containing cocaine in a shopping cart in the parking lot. Fernandez had a pager with the number Negrete had left on it. After officers arrested Fernandez, they searched his apartment pursuant to a search warrant and found $650 cash, marijuana, a scale, a rifle, and ammunition.

An information charged Fernandez with violating the prohibition of selling, transporting, or offering for sale a controlled substance and being a felon in possession of a firearm. The information further alleged Fernandez had a juvenile felony adjudication.

The parties eventually reached a negotiated disposition. Fernandez's total exposure was 11 years and four months. The prosecution initially offered six years, then 270 days. The agreed upon disposition was a plea of no contest to a new charge of possession of a controlled substance for sale for which Fernandez

2

would serve 180 days in jail and three years' probation. The rest of the charges would be dismissed.

At the plea hearing, the prosecution advised Fernandez that "[i]f you're not a citizen of the United States, your plea here today can cause you to be deported, denied re-entry, denied naturalization, or denied amnesty." At a later hearing, the court sentenced Fernandez in accordance with the plea agreement. Fernandez later successfully petitioned to have his conviction dismissed.

In 2024, Fernandez filed a motion to vacate his conviction under section 1473.7. The parties discussed a new immigration-neutral plea but did not reach agreement. After a hearing, the trial court denied the motion, finding the record showed Fernandez knowingly and intelligently waived his rights and took the plea to avoid significant jail time.

Fernandez appeals.

Because the record establishes Fernandez suffered from prejudicial error in accepting the plea, we reverse and remand to the trial court.

Section 1473.7 allows noncitizens who have served their sentences to vacate their convictions if they can establish that their convictions are invalid due to prejudicial error impairing their ability to meaningfully understand, defend against, or knowingly accept the actual or potential immigration consequences of their conviction. (§ 1473.7, subd. (a)(1).) To show prejudicial error, the noncitizen must demonstrate a reasonable probability that the noncitizen would have rejected the plea if the noncitizen had correctly understood the immigration consequences. (*People v. Espinoza* (2023) 14 Cal.5th 311, 316 (*Espinoza*).)

In making this determination, we consider the totality of the circumstances. (*Espinoza*, *supra*, 14 Cal.5th at p. 320.) Those circumstances include the noncitizen's ties to the United States, the importance the noncitizen placed on avoiding deportation, the noncitizen's priorities in negotiating a plea bargain, and whether the noncitizen had reason to believe an immigration-neutral disposition was available. (*Id.* at 320.) However, this list is not exhaustive, and no single type of evidence is necessary for relief. (*Id.* at p. 321.) Any assertions by the noncitizen must be corroborated with objective evidence. (*Id.* at p. 316.) Objective evidence can include facts in declarations, contemporaneous documentation of the noncitizen's immigration concerns, and the charges the noncitizen faced. (*Id.* at p. 321.)

We review independently whether noncitizens have demonstrated a reasonable probability they would have rejected a plea offer had they understood its immigration consequences. (*Espinoza*, *supra*, 14 Cal.5th at p. 319.) Where the trial court has based its rulings on a "cold record," or, in other words, only documentary evidence, we need not defer to trial court fact finding. (*Id.* at pp. 319–320.)

We apply these guidelines to this case.

The error Fernandez alleges is that he subjectively failed to understand the mandatory immigration consequences his plea would have. Case law establishes that the noncitizen's subjective misunderstanding qualifies as sufficient error under the statute. (*People v. Manzanilla* (2022) 80 Cal.App.5th 891, 909–910 (*Manzanilla*) [focus is on noncitizen's own error in not understanding the plea would subject him to mandatory deportation and permanent exclusion].)

4

Objective and contemporaneous evidence supports Fernandez's assertion. During the hearing, the prosecution advised Fernandez that his plea "can" have immigration consequences. According to our Supreme Court, there is a critical difference between being notified the plea may have immigration consequences and being told the plea will make one immediately deportable. (*People v. Vivar* (2021) 11 Cal.5th 510, 523 (*Vivar*) [failure to advise of certain immigration consequences of plea rendered representation constitutionally deficient].) When a noncitizen receives only the first advisement in a situation calling for the second, the advisement is insufficient. (*Id*. at p. 533 [advisement that plea might have adverse immigration effects insufficient where deportation would be mandatory].)

Here, Fernandez was pleading to an aggravated felony. (*Manzanilla, supra*, 80 Cal.App.5th at pp. 903–904.) Under immigration law, that made him deportable and provided grounds for permanent exclusion. (*Ibid*.)

A minute order reflects, "The defendant is advised that upon conviction he will be deported if he is not a United States citizen." However, the transcript from the hearing reflects no such advisement, nor does the prosecution argue Fernandez received such an unequivocal advisement. From the record we can discern the only immigration advisement provided to Fernandez was the ambiguous one from the prosecution, as described above. Fernandez's statement corroborates that his counsel did not advise him of any mandatory immigration consequences. Fernandez has established his subjective misunderstanding of the mandatory immigration consequences of his plea.

5

The trial court found that there was no legal invalidity because Fernandez had been advised of the consequences of the plea and knowingly and intelligently waived his rights. The court noted "the charging document itself implies that he knew." We read the record differently. As described above, the only immigration advisement Fernandez received did not alert him to the mandatory immigration consequences.

We next consider whether Fernandez established the error was prejudicial. Here, our focus is whether there is a reasonable probability Fernandez would have turned down the plea if he understood the immigration consequences. (*Vivar*, *supra*, 11 Cal.5th at pp. 528–529 [reasonable probability inquiries focus on whether the noncitizen would have refused plea, not whether the noncitizen would have obtained a more favorable result].)

Fernandez declares he would have refused the plea had he understood. We look to the totality of the circumstances to see if objective evidence corroborates these claims.

We first consider Fernandez's ties to the United States. Fernandez fled to the United States from Cuba with his entire family when he was seven. That same year, the United States granted political asylum and legal residency to Fernandez and his family.

At the time of his plea, Fernandez's three brothers lived in the United States. His mother also remained in the United States, and Fernandez supported her financially when she needed assistance. His father lived in the United States until his death in 2024. Fernandez completed all of his schooling in this country. At the time of the plea, he had been working for Fox Studios, a job he returned to after his release. All of Fernandez's family ties were in the United States, which he considered his

6

home. Cuba was a foreign country to him, and he feared returning for the same reasons his family had previously fled.

The prosecution argues Fernandez's ties pale in comparison to those of noncitizens with spouses and children. While a spouse and children may provide compelling evidence of a noncitizen's connection to the country, we will not penalize Fernandez for being single at the time of his plea. In determining the strength of the noncitizen's ties, it is logical to look at the closest relationships in the noncitizen's life. Where the noncitizen is a young, single person, this will likely be the noncitizen's parents and siblings. The ties Fernandez shows are sufficient to demonstrate the importance he would place on remaining in the United States. (*People v. Rodriguez* (2021) 68 Cal.App.5th 301, 325 [deep, lifelong ties to United States compelling evidence noncitizen would reject plea leading to mandatory deportation].)

This desire is particularly strong where the noncitizen is an asylee. In addition to facing disruption of the most important relationships in the noncitizen's life, an asylee must also fear returning to a place the asylee has an adjudicated reason to fear. (*People v. Padron* (2025) 109 Cal.App.5th 950, 963 (*Padron*) [asylee's desire to avoid deportation corroborated by findings required to grant asylum].)

We turn next to the importance Fernandez placed on immigration consequences and his priorities in negotiating a plea bargain. Fernandez declares he would not have accepted the plea bargain had he understood the attendant mandatory immigration consequences and "would have done anything to avoid putting [him]self at risk of the severe immigration consequences." He states his counsel did not discuss such consequences with him. As mentioned above, as an asylee, the risks associated with being

7

deported were especially acute for Fernandez.  (*Padron*, *supra*, 109 Cal.App.5th at p. 963.)

Finally, we consider whether there was reason for Fernandez to believe an immigration-neutral disposition was possible.  The prosecution emphasizes how great Fernandez's exposure on the charged crimes was:  11 years and four months.  The trial court similarly found Fernandez's exposure and his desire to avoid a long jail sentence mattered most in making his plea.  The prosecution also emphasizes the strength of the evidence against Fernandez and his previous strike.  While these points are valid, in the end, the prosecution agreed to a mere six months' jail time and a charge not included in the original information.  The prosecution offers no persuasive reason to believe an immigration safe offer would have been automatically rejected. (*Manzanilla*, *supra*, 80 Cal.App.5th at p. 909 [where opening offer was 365 days, reasonable to think reduction to 364 days might be accepted].)  At the very least, Fernandez could have hoped for a charge with lesser immigration consequences than the mandatory deportation and loss of asylum the current charge entailed. (*Padron*, *supra*, 109 Cal.App.5th at p. 965 [noncitizen may have reasonably hoped to receive plea with lesser immigration consequences that would not cause mandatory deportation and loss of asylum].)

The prosecution argues Fernandez's counsel's arguments about immigration safe possible pleas are mere speculation.  But that is almost always true of this type of inquiry and here, the facts support a belief that it would not have been unreasonable for Fernandez to believe such a disposition could be reached. (*People v. Singh* (2022) 81 Cal.App.5th 147, 154.)  That the prosecution remained amenable to reaching such a plea even at

the time of Fernandez's section 1473.7 motion corroborates this belief.  It also undermines the prosecution's argument that there could never have been an immigration safe plea.

The prosecution cites *People v. Martinez* (2013) 57 Cal.4th 555, 564 for the point that a court can take into consideration the probable outcome of a trial in judging the likelihood the noncitizen would refuse a plea.  The more salient point from that case is its holding that the court is not determining if the prosecution would have offered a different bargain but whether there was reason to believe the defendant would have expected or hoped for one.  (*Id*. at p. 567.)  Moreover, as the United States Supreme Court has held, where a trial may be the only option with a possibility of avoiding deportation, taking that gamble is not automatically irrational.  (*Lee v. United States* (2017) 582 U.S. 357, 371.)  Fernandez has established it is reasonably probable he would have rejected the plea had he understood the mandatory immigration consequences.

## DISPOSITION

We reverse and remand for the trial court to enter an order granting Fernandez's motion pursuant to section 1473.7.

WILEY, ACTING P. J.

We concur:

VIRAMONTES, J.          SCHERB, J.

9