Filed 5/28/26  P. v. Gonzalez CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B341277 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. BA108927 |
| v. | |
| JOSE ALFREDO GONZALEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Alison S. Matsumoto, Judge.  Reversed and remanded with instructions.

Sabrina R. Damast, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jose Alfredo Gonzalez appeals the trial court's denial of his motion to vacate a conviction pursuant to section 1473.7. We reverse and remand with instructions for the trial court to enter an order granting the motion. Undesignated citations are to the Penal Code.

In 1995, pursuant to a plea agreement, Gonzalez pleaded guilty to a violation of section 288, committing a lewd act on a minor under 14 years old (his niece). The record is unclear if the conviction was under subdivision (a) or subdivision (b), which involves force. For the purposes of this appeal, the distinction is immaterial. In accordance with the terms of the agreement, the trial court sentenced Gonzalez to 298 days in prison and five years of probation.

Beyond these basic facts, the record of the plea is scant. There is no transcript from the court's taking of the plea or sentencing. The current prosecutor was unable to locate either the previous district attorney or his file. The previous defense counsel is deceased. Judge Connor, the previous judge, provided a declaration of her general practices but does not recall Gonzalez's case in particular.

Contemporaneously, Judge Connor marked a box on the plea form stating: "Defendant advised of possible [e]ffects of plea on any alien/citizenship/probation/parole status." She later declared that her practice was to ensure the prosecutor "fully advised the defendant of the potential immigration consequences, including deportation, denial of entry, and denial of naturalization." She would not check the above-mentioned box until she was satisfied the defendant had received the full immigration advisement.

2

In December 2023, Gonzalez filed a motion to vacate his conviction under section 1473.7. The prosecutor opposed the motion. The trial court heard testimony from Gonzalez, one of his immigration attorneys, and his wife. After hearing argument, the trial court denied the motion, finding Gonzalez had not established prejudicial error.

Because the record shows Gonzalez has established he suffered from a prejudicial error, we reverse and remand to the trial court.

Section 1473.7 allows noncitizens who have served their sentences to vacate their convictions if they can establish that their convictions are invalid due to prejudicial error impairing their ability to meaningfully understand, defend against, or knowingly accept the actual or potential immigration consequences of their conviction. (§ 1473.7, subd. (a)(1).) To show prejudicial error, the noncitizen must demonstrate a reasonable probability that the noncitizen would have rejected the plea if the noncitizen had correctly understood the immigration consequences. (*People v. Espinoza* (2023) 14 Cal.5th 311, 316 (*Espinoza*).)

In making this determination, we consider the totality of the circumstances. (*Espinoza*, *supra*, 14 Cal.5th at p. 320.) Those circumstances include the noncitizen's ties to the United States, the importance the noncitizen placed on avoiding deportation, the noncitizen's priorities in negotiating a plea bargain, and whether the noncitizen had reason to believe an immigration-neutral disposition was available. (*Ibid*.) However, this list is not exhaustive, and no single type of evidence is necessary for relief. (*Id*. at p. 321.) Any assertions by the noncitizen must be corroborated with objective evidence. (*Id*. at

3

p. 316.)  Objective evidence can include facts in declarations, contemporaneous documentation of the noncitizen's immigration concerns, and the charges the noncitizen faced.  (*Id*. at p. 321.)

We review independently whether noncitizens have demonstrated a reasonable probability they would have rejected a plea offer had they understood its immigration consequences. (*Espinoza*, *supra*, 14 Cal.5th at p. 319.)  Where the trial court has based its rulings on a "cold record," or, in other words, only documentary evidence, we need not defer to trial court fact finding.  (*Id*. at pp. 319–320.)

We apply these guidelines to this case.

Gonzalez alleged he subjectively failed to understand the mandatory immigration consequences his plea would have.  Such error is sufficient under the statute.

The record, although sparse, supports this contention. Words creating ambiguity accompany each mention of immigration consequences, contrary to the prosecutor's assertion. The crime to which Gonzalez pleaded made his deportation mandatory and his inadmissibility unwaivable.  Yet, the advisements were of "possible" consequences.  While Judge Connor declared her practice was to ensure defendants received sufficient immigration advisements, she too mentions only possible consequences.  She does not state she or the district attorney made the mandatory consequences explicit.  Because Gonzalez's plea predated *Padilla v. Kentucky* (2010) 559 U.S. 356, the requirement making this advisement mandatory for defense counsel did not yet exist.  (See *People v. Manzanilla* (2022) 80 Cal.App.5th 891, 905–906 [where immigration consequences clear and virtually certain, after 2010 counsel now must advise client of those consequences].)  Nothing in the record suggests

4

anyone involved in Gonzalez's case anticipated this development. Without an explicit statement about the mandatory consequences, the immigration advisement was inadequate. (*People v. Vivar* (2021) 11 Cal.5th 510, 523 (*Vivar*) [failure to advise of certain immigration consequences of plea rendered representation constitutionally deficient].)  Thus, we reject the prosecutor's argument that the presumption that the court and counsel comply with the law created an inference Gonzalez would have been advised of the mandatory consequences.

The record contains additional facts supporting the inference that Gonzalez misunderstood the ramifications of his plea because no one told him his plea carried a mandatory immigration consequence.  Gonzalez's declaration and testimony are corroborating.  Letters from Gonzalez's wife, neighbors, sister, and mother-in-law also support this inference.  Each of these people was familiar with Gonzalez's life at the time, and each stated they did not remember immigration concerns ever being mentioned in connection with his plea.

The trial court noted that a psychological evaluation completed before Gonzalez's sentencing included a recommendation that Gonzalez be deported.  Gonzalez testified he did not remember his counsel discussing that with him.  The trial court found it "inconceivable that the report from the C.D.C. was not discussed between the defendant and his attorney."  We defer to the trial court's credibility finding, but this fact supports Gonzalez:  the report lists deportation as a recommendation and not as a mandatory consequence.  As noted, an advisement that a mandatory consequence is a possibility is inadequate.  (*Vivar*, *supra*, 11 Cal.5th at p. 533 [advisement that plea might have

adverse immigration effects insufficient where deportation would be mandatory].)

Shortly after Gonzalez completed his sentence, he attempted to resume the process of adjusting his status. This fact also supports Gonzalez's petition: if he had understood the mandatory result, he would not have wasted his time or money on an effort that risked bringing his status to the attention of immigration authorities. (*Espinoza, supra*, 14 Cal.5th at p. 320 [taking actions that subject noncitizen to immigration authority's scrutiny inconsistent with an understanding that noncitizen is now immediately deportable].)

We turn next to whether Gonzalez has established prejudice from this mistake. We focus on whether there is a reasonable probability Gonzalez would have turned down the plea agreement had he understood the immigration consequences.

We look at all the circumstances. (*Espinoza, supra*, 14 Cal.5th at p. 320.)

First, we consider Gonzalez's ties to the United States. Gonzalez came to the United States when he was 25. At the time of his plea, he had been married to a United States citizen for almost a decade and had two children, born in 1987 and 1991. His sister and cousins also lived in the United States. Gonzalez had a third child living in Guatemala but did not have a relationship with her until years after his plea.

Gonzalez worked as a welder and was the main breadwinner for a household that included his wife, children, sister, sister-in-law, and mother-in-law. Since the age of 25, his whole life had been in the United States. His wife stated they planned to remain in the United States, and in fact Gonzalez was

6

in the process of adjusting his status at the time of his conviction. Gonzalez continued these efforts after his release and remained in the country until he was deported in 2009. These ties are sufficient.

We consider next the importance Gonzalez placed on immigration consequences. Gonzalez declares he did not understand the immigration consequences, and he never would have accepted the plea agreement if he had understood them. The letters from people close to him corroborate that no one discussed immigration consequences in connection with the conviction with Gonzalez. His continued efforts to adjust his status buttresses his claim that staying in this country was a priority.

The trial court found that receiving probation instead of prison time was Gonzalez's priority. This preference does not exclude Gonzalez's concern with his immigration status. If Gonzalez did not understand probation might come at the cost of a more favorable immigration outcome, his focus on probation makes sense.

Finally, we determine whether there was reason for Gonzalez to believe an immigration-neutral disposition was possible. Gonzalez's attorney testified to several other crimes to which Gonzalez could have pleaded that would have been better for his immigration prospects. Although Gonzalez's exposure was eight years, his plea agreement was for less than a year of prison time. He may have needed to accept a longer prison time to obtain a lesser conviction, but he averred this willingness. The sparse record we have does not provide reason to believe the prosecutor would have rejected such a proposal automatically. Moreover, though the trial court stated, and the prosecutor

argues, it would have been irrational to roll the dice on a longer sentence with such an offer in hand, the Supreme Court of the United States has recognized that someone in Gonzalez's position might indeed rationally make such a decision, as Gonzalez affirmed he would have.  (*Lee v. United States* (2017) 582 U.S. 357, 371.)

## DISPOSITION

We reverse and remand for the trial court to enter an order granting Gonzalez's motion pursuant to section 1473.7.



WILEY, J.

We concur:


STRATTON, P. J.


SCHERB, J.

8